UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN HONDA FINANCE CORPORATION, a California Corporation,<br>           Plaintiff,<br><br>       v.<br><br>HOLLINGER, INC.,<br>a Pennsylvania Corporation,<br>           Defendant. | :<br>:<br>:<br>:<br>:<br>:   Civil No. 5:20-cv-01896-JMG<br>:<br>:<br>:<br>:<br>: |

MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                             August 20, 2021

**I.    INTRODUCTION**

This matter arises from a breach of contract action between Plaintiff American Honda Finance Corporation ("AHFC") and Defendant Hollinger, Inc. ("Hollinger") based on Hollinger's failure repay AHFC's advances of wholesale lines of credit financing for the purchase of certain Honda products. After Hollinger ceased operations and stopped making payments to AHFC in April 2019, AHFC demanded payment of Hollinger's outstanding balance of $85,601.84. Hollinger has failed to respond to AHFC's demands or any filings in this matter. Presently before the Court is Plaintiff's Motion for Entry of Default Judgment. For the reasons set forth in greater detail below, Plaintiff's Motion is granted.

**II.   BACKGROUND**

AHFC is a California corporation that provides wholesale financing to authorized dealers of Honda motorcycles. Compl. ¶ 1. On or about July 30, 2018, AHFC entered into a Wholesale Finance Agreement ("WFA") and a Wholesale Finance Security Agreement ("WFSA") with

1

Defendant Hollinger. *Id.* ¶¶ 7, 9. Pursuant to the terms of these agreements, AHFC provided wholesale lines of credit financing to Hollinger for the purchase of certain Honda products. Pl. Mot., Ex. 1.B at 1-2. Hollinger agreed to repay these advances with interest and granted AHFC a purchase-money security interest in the inventory financed under the terms of the WFA.[1] *Id.* In the event of a default, AHFC was authorized to declare all obligations immediately due and payable. *Id.*, Ex. 1.A at 8. Additionally, Hollinger President Douglas R. Michael signed a Continuing Personal Guarantee (the "Guarantee") wherein he promised prompt payment in full of all outstanding financial obligations incurred by Hollinger as they became due. *Id.*, Ex. 1.D at 1.

Hollinger ceased operations and stopped making payments to AHFC in April 2019. Compl. ¶¶ 21-22. In July 2019, AHFC demanded payment of the balance due under the WFA. Pl. Mot., Ex. 1 ¶ 20. At the time, Hollinger's outstanding balance totaled $85,601.84. *Id.*, Ex. 1.C. Despite AHFC's demand, Hollinger failed to remit payment in satisfaction of its debt. *Id.*, Ex. 1 ¶ 21. AHFC has also been unable to locate the collateral subject to their security interest and has not received any proceeds from Hollinger's sale thereof.[2] *Id.* ¶ 16. On March 6, 2020, AHFC sent Hollinger a final demand seeking payment, but Hollinger failed to respond. *Id.* ¶ 22.

On April 14, 2020, AHFC filed a Complaint alleging breach of contract against Defendant Hollinger (Count I) and breach of guaranty against Defendant Michael (Count II). *See* ECF No. 1. AHFC subsequently filed a Notice of Voluntary Dismissal of Defendant Michael on July 22, 2020. *See* ECF No. 2. On August 25, 2020, the Court granted AHFC's Motion to Enlarge Time to Serve Defendant and Petition for Alternative Service. *See* ECF No.

---

[1] AHFC Wholesale Operations Manager Michael Moore attests that AHFC has perfected its security interests as to Hollinger's assets through periodic UCC filings. Pl. Mot., Ex. 1 ¶ 7.
[2] Although AHFC has been unable to ascertain the location of the collateral, Mr. Moore believes that Hollinger sold it to a third party. Pl. Mot., Ex. 1 ¶ 15.

5.  AHFC filed an Affidavit of Service upon Defendant Hollinger on October 8, 2020.  *See* ECF No. 7.  On November 3, 2020, following Hollinger's failure to respond or otherwise appear in this matter, the Clerk of Court granted AHFC's Request for Default against Hollinger.

On November 18, 2020, AHFC filed the present Motion for Entry of Default Judgment. *See* ECF No. 9.  AHFC seeks recovery of the outstanding balance of $85,601.84 owed under the terms of the WFA, along with any accrued interest and late fees.  Compl. ¶¶ 46, 47.  In addition, AHFC requests damages in the amount of $664.46 for court and services costs and $6,818.63 in attorney's fees.  Pl. Mot., Ex. 2 ¶¶ 14, 15.[3]  Accordingly, AHFC's purported damages total $93,084.93.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a properly served defendant when default has been entered by the Clerk of Court. *See* Fed. R. Civ. P 55(b)(2); *see also Anchorage Assocs. v. Virgin Islands. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).  "Three factors control whether default judgment should be granted: (1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  In considering these factors, the "court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages." *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017).

The Court may make its determination concerning the appropriate amount of damages by reviewing detailed affidavits from the claimant.  *See Amresco Financial I L.P. v. Storti*, No. 99-

---

[3] Based on 38.9 hours of work at a rate of $225 per hour.  Pl. Mot., Ex. 2 at 3.

3

2613, 2000 WL 284203, at *2 (E.D. Pa. Mar. 13, 2000).  Under Pennsylvania law, there is no requirement that a damage calculation meet a standard of mathematical certainty.  *See J.W.S. Delavau v. E. Am. Transp. & Warehousing*, 810 A.2d 672, 685 (Pa. Super. 2002).  Rather, a reasonable calculation should be made by looking at the evidence and the affidavits submitted by the moving party.  *See J & J Sports Productions, Inc. v. Roach*, No. 07-5059, 2008 WL 8901291, at *1 (E.D. Pa. July 8, 2008).  If such a reasonable calculation cannot be made, then the court may order a hearing to better determine the appropriate damages.  *Bakley v. A & A Bindery, Inc.*, No. 86-5242, 1987 WL 12871, at *1 (E.D. Pa. June 18, 1987).

IV.     **ANALYSIS**

The Court finds that the aforementioned factors, as applied to the facts of this case, weigh in favor of granting Plaintiff's Motion.  The prejudice sustained by AHFC, Hollinger's failure to present a litigable defense, and Hollinger's willful failure to respond in this matter warrants a judgment in Plaintiff's favor.  AHFC has also provided the requisite factual support for their claim for breach of contract against Hollinger, as well that their claim for recovery of all attendant attorneys' fees and court costs.  This includes a copy of the WFA, WFSA, a sworn affidavit by AHFC Wholesale Operations Manager Michael Moore attesting to the terms of the agreements and Hollinger's purported breach thereof, and an accounting of attorney's fees and court costs incurred by AHFC.  Accordingly, the Court finds that an entry of default judgment is appropriate in this matter.

1.      **Prejudice to AHFC**

In considering the prejudice to AHFC were the Court to deny its Motion for Entry of Default Judgment, the Court finds that this factor weighs in AHFC's favor.  Since July 2019, Hollinger has been unresponsive to AHFC's repeated attempts to collect Hollinger's outstanding

balance.  As discussed in greater detail in Section IV.2, *supra*, Hollinger realized the benefit of wholesale lines of credit financing from AHFC without honoring their contractual obligation to repay these funds with interest.  Absent an entry of default judgment, AHFC will be critically prejudiced by having no other recourse to enforce the WFA and WFSA, or recover the funds wrongfully retained by Hollinger.

### 2. Lack of Litigable Defense

The second factor in this analysis, whether Hollinger appears to have a litigable defense, also weighs in AHFC's favor.  Given its plain and unambiguous terms, the Court finds that the WFA is a fully integrated, valid contract governing the credit financing arrangement between AHFC and Hollinger.  The WFA states in relevant part that:

> [Hollinger] may from time to time request Advances from AHFC for the purchase of Property by [Hollinger]…AHFC, in its sole discretion, shall have the right to determine the extent to which, the terms and conditions on which, and the period for which it will make Advances…AHFC may make an Advance by paying the invoice amount of Property ordered by or shipped to [Hollinger] by a Vendor…Any invoice amount or other amount advanced by AHFC concerning any Property to any such Vendor shall be an Advance made by AHFC to Hollinger under this Agreement, secured by Collateral, and shall be repayable by [Hollinger] according to the requirements of this Agreement.
> …
>
> The total amount outstanding from time to time of all Advances shall be a single obligation of [Hollinger], even though Advances are made from time to time. The terms of payment, interest rate, due dates and other terms shall be specified by AHFC from time to time in AHFC Bulletins, monthly billing statements or other written communications. The total amount of all Advances, or any portion of that amount as demanded, together with accrued interest and Charges, shall be payable by [Hollinger] to AHFC upon demand.
> …
>
> AHFC shall provide monthly billing statements to [Hollinger] of Advances made by AHFC under this Agreement, and [Hollinger] shall review each statement promptly upon receipt…Such monthly statements shall reflect, among other things, the Rate, accrued interest due, and any Charges. Although each statement may be subsequently adjusted by AHFC, it shall be presumed to be correct and binding on [Hollinger] (absent manifest error), unless [Hollinger] advises AHFC of a discrepancy in writing within 10 calendar days from [Hollinger's] receipt of such statement. [Hollinger] will make all payments

> promptly when due as indicated on any statements or other notices or documents submitted to [Hollinger] by AHFC.
>
> …
>
> The occurrence of any one or more of the following and the continuation of the same beyond any applicable cure period shall constitute a default ("Default") under this Agreement, the WFSA and the other Loan Document: Dealer's failure to pay when due any sums payable under this Agreement or…in AHFC's good faith opinion, reasonable grounds for insecurity arise regarding [Hollinger's] performance and adequate assurances are not given by [Hollinger] to AHFC.
>
> …
>
> Upon the occurrence of a Default, or at any time after a Default has occurred, AHFC in its sole discretion may…demand the Indebtedness to be immediately due and payable (the "Demand"), and/or…exercise any or all of its remedies pursuant to the WFSA, any other Loan Documents, at law or in equity.
>
> Pl. Mot., Ex. 1.A at 3-8.

According to the billing statement submitted by AHFC dated August 31, 2019, Hollinger received $85,601.84 in credit financing for power equipment purchases pursuant to the terms of the WFA. *Id.*, Ex. 1.C. To date, Hollinger has failed to remit payment to AHFC or respond in any way to AHFC's demands. As such, Hollinger is in breach of the terms of the WFA, AHFC may declare all obligations immediately due and payable, and it may exercise any remedies at law or in equity to recover Hollinger's outstanding balance.

AHFC also claims that it is entitled to "all costs and expenses incurred by AHFC, including AHFC's attorney fees in connection with, among other things, locating collateral, collecting the amounts owed, and enforcing AHFC's rights under the WFA." Compl. ¶ 27. The WFSA states in relevant part that:

> Expenses of protecting, monitoring, retaking, holding, preparing for sale, selling, collecting or the like shall include [AHFC's] attorneys' (including any in-house attorney), employees and personnel, expert witnesses' and consultants' fees and disbursements, including without limitation those attorneys', expert witnesses' and consultants' fees and disbursements, and other expenses, incurred by [AHFC] in connection with any appeal, the enforcement of any judgment, or any Insolvency, bankruptcy, reorganization, arrangement or other similar proceedings involving [Hollinger] that in any way affect the

6

exercise by [AHFC] of its rights and remedies hereunder shall be the sole responsibility of [Hollinger].

Pl. Mot., Ex. 1.B at 10.

According to an affidavit by Plaintiff's counsel, AHFC has paid $6,818.63 in attorneys' fees and $664.46 in court and service costs in their efforts to obtain relief against Hollinger. *Id.*, Ex. 2 ¶¶ 14-16. Having incurred these expenses in the course of exercising its rights and remedies pursuant to the WFA and WFSA, the Court finds that AHFC is also entitled to recovery of these attorneys' fees, court costs, and service costs.

### 3. Delay and Culpable Conduct

The final factor to consider is whether the delay in this case is due to Hollinger's culpable conduct. "Culpable conduct" is conduct that is done "willfully or in bad faith." *Chamberlain*, 210 F.3d at 164 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983)). Even when there is no evidence that the defendant acted in bad faith, acceptance of service of the complaint and a subsequent failure to respond renders their conduct "willful." *See Service Employees Int'l Union Local 32BJ, District 36 v. ShamrockClean, Inc.*, 325 F. Supp. 3d 631, 637 (E.D. Pa. 2018). AHFC properly served the Secretary of the Commonwealth with the Complaint and Summons via certified mail on September 10, 2020. *See* ECF No. 7. On October 7, 2020, the Secretary of Commonwealth provided a Notice of Service upon Hollinger, evidencing a service date of September 23, 2020. *Id.* To date, Hollinger has not responded to the Complaint. Accordingly, the Court finds that Hollinger's conduct constitutes a willful delay in these proceedings, thereby weighing the third factor of the Court's analysis in favor of granting default judgment.

V.      **CONCLUSION**

The Court finds that the applicable factors in considering a party's motion for entry of default judgment weigh in favor of AHFC.  The record evidence demonstrates that Hollinger breached its agreements with AHFC, and thereafter failed to respond to AHFC's attempts to recover its advances of wholesale lines of credit financing.  Hollinger has also failed to respond in this action and, by extension, has presented no litigable defense.  In light of the foregoing, an entry of default judgment in the amount of $93,084.93 against Hollinger is appropriate.  Therefore, Plaintiff's Motion is granted.  An appropriate Order follows.


BY THE COURT:


*/s/John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge